**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0631n.06

No. 17-3160

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 14, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MARLA PATRICIA LOPEZ-DIEGO,<br>DERIAN RAMIREZ-LOPEZ,<br><br>　　　　**Petitioners,**<br><br>v.<br><br>JEFFERSON B. SESSIONS, III, U.S.<br>ATTORNEY GENERAL,<br><br>　　　　**Respondent.** | ON PETITION FOR REVIEW<br>OF A FINAL ORDER OF THE<br>BOARD OF IMMIGRATION<br>APPEALS<br><br><br>**OPINION** |

Before: GUY, MOORE, and ROGERS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Marla Lopez-Diego and her minor son Derian Ramirez-Lopez, both citizens of Honduras, entered the United States in March 2014. They entered without being admitted or paroled after an inspection by a Department of Homeland Security ("DHS") immigration officer and were immediately served with Notices to Appear. Lopez-Diego and her son conceded removability and filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that they faced discrimination in Honduras as members of a minority group, the specific threat of violence from the killers of Ramirez-Lopez's father, and the general threat of violence from the high crime rate in their country.

The Immigration Judge ("IJ") found that the petitioners were credible, but denied their applications for asylum, withholding of removal, and protection under the CAT. The Board of

Immigration Appeals ("BIA") affirmed the denial on appeal. After reviewing the record under the substantial evidence standard, we conclude that Lopez-Diego and Ramirez-Lopez cannot satisfy their burden of proof for asylum, withholding of removal, or protection under the CAT. We therefore **DENY** their petitions for review.

## I. BACKGROUND

Honduran citizens Lopez-Diego and her minor son Ramirez-Lopez entered the United States on or about March 14, 2014. Administrative Record ("A.R.") at 483 (Lopez-Diego Notice to Appear at 1); A.R. at 530 (Ramirez-Lopez Notice to Appear at 1). The two entered the country without being admitted or paroled after an inspection by a DHS immigration officer in violation of 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at 483 (Lopez-Diego Notice to Appear at 1); *id.* at 530 (Ramirez-Lopez Notice to Appear at 1). They were detained for two days and were then released. *Id.* at 232 (Removal Proceeding Tr. at 90). Subsequently, Lopez-Diego and her son moved to Columbus, Ohio. *Id.* at 233 (Removal Proceeding Tr. at 91).

At the petitioners' consolidated removal hearing, both admitted the factual allegations and conceded removability. *Id.* at 149 (Removal Proceeding Tr. at 9). On April 22, 2015, Lopez-Diego filed an I-589 application for asylum, withholding of removal, and protection under the CAT. *Id.* Lopez-Diego filed an amended I-589 on September 2, 2015. *Id.* at 159 (Removal Proceeding Tr. at 18); *id.* at 298–316 (Lopez-Diego Amended I-589). Ramirez-Lopez also filed an I-589 application for asylum, withholding of removal, and protection under the CAT.[1] *Id.* at

---

[1]Although this document is entitled "Respondent's Amended I-589, Application for Asylum and Withholding of Removal," this was Ramirez-Lopez's first independent application. A.R. at 159 (Removal

505–22 (Ramirez-Lopez I-589). In their applications, the petitioners asserted two main reasons behind their fear of returning to Honduras. First, Lopez-Diego and Ramirez-Lopez claim that they face discrimination as members of the Garifuna ethnic group. *Id.* at 311 (Lopez-Diego Amended I-589 Add. at 1); *id.* at 518 (Ramirez-Lopez I-589 Add. at 1). Second, after Ramirez-Lopez's father was murdered, Lopez-Diego feared that the unidentified perpetrators would target their children, specifically their eldest son Derian.[2] *Id.* at 312 (Lopez-Diego Amended I-589 Add. at 2); *id.* at 519 (Ramirez-Lopez I-589 Add. at 2).

At the removal hearing, Lopez-Diego testified that she was Garifuna, which is a distinct ethnic group in Honduras. *Id.* at 183 (Removal Proceeding Tr. at 41). The Garifuna have darker skin than other ethnic groups in Honduras, wear different clothing, and speak a distinctive dialect. *Id.* at 184–85 (Removal Proceeding Tr. at 41–43). Lopez-Diego testified that she lived in Tornabe, Honduras from 2011 to 2013 in her family's ancestral home, which was owned by her mother at the time. *Id.* at 192 (Removal Proceeding Tr. at 50); *id.* at 201 (Removal Proceeding Tr. at 59). In September 2013, the government evicted Lopez-Diego and her family from their home, along with other members of the local community, in order to build a hotel on the land. *Id.* at 193 (Removal Proceeding Tr. at 51). Lopez-Diego testified that the Honduran government did not compensate her family. *Id.* at 195 (Removal Proceeding Tr. at 53). According to Lopez-Diego, the government evicted the local residents from Tornabe because the

---

Proceeding Tr. at 18). Ramirez-Lopez had previously been included only as a derivative applicant on his mother's I-589. *Id.*

[2]In addition to Derian Ramirez-Lopez, who is the rider petitioner in this case, Lopez-Diego has two younger sons, Kevin and Kelvin Ramirez-Lopez, who still reside in Honduras. *Id.* at 301 (Lopez-Diego Amended I-589 at 3).

town is on the coast and well-suited for the development of a tourist resort. *Id.* at 197 (Removal Proceeding Tr. at 55).

Lopez-Diego testified that she had moved to Tornabe in 2011 after the father of her children, Dionisio Ramirez Marcelino (Ramirez), was murdered in March of that year. *Id.* at 204–06 (Removal Proceeding Tr. at 62–64). Ramirez was shot while working as a bus driver in San Pedro Sula, Honduras. *Id.* at 206 (Removal Proceeding Tr. at 64). After the shooting, two individuals visited Lopez-Diego's home and asked after her son Derian, who had sometimes accompanied his father Ramirez to work. *Id.* at 211 (Removal Proceeding Tr. at 69). Lopez-Diego feared that the two individuals were Ramirez's murderers and that fear prompted her to flee with her family back to her ancestral home along the coast. *Id.* at 212 (Removal Proceeding Tr. at 70).

Lopez-Diego testified that she struggled to support her family after Ramirez was killed. *Id.* at 210 (Removal Proceeding Tr. at 68). According to Lopez-Diego, there is significant discrimination against Garifunas in Honduras, and she was unable to obtain steady employment because employers preferred to hire applicants who were white. *Id.* at 208–10 (Removal Proceeding Tr. at 66–68). Lopez-Diego testified that she chose to come to the United States in February 2014 because of the discrimination she faced in Honduras, her fears about further violence from Ramirez's unidentified murderers, and the high crime rate in Honduras in general. *Id.* at 215–19 (Removal Proceeding Tr. at 73–77).

The government agreed to stipulate that Ramirez-Lopez's testimony would be the same as his mother's regarding their eviction and the discrimination they face in Honduras as

4

Garifunas. *Id.* at 238 (Removal Proceeding Tr. at 96). Ramirez-Lopez testified for the limited purpose of explaining his fear of further violence from his father's murderers. Ramirez-Lopez said that he would visit his father on the bus and Ramirez would introduce him to passengers as his son. *Id.* at 243 (Removal Proceeding Tr. at 101). Ramirez-Lopez testified that he was afraid that the unknown perpetrators would kill him and would find the rest of his remaining family through him and kill them as well. *Id.* at 245–46. (Removal Proceeding Tr. at 103–04).

To support their application, petitioners submitted multiple additional documents including the 2014 U.S. Department of State Country Report on Human Rights Practices for Honduras, which discusses the discrimination faced by minority groups in Honduras, including Garifunas. *Id.* at 364–377 (Resp't Ex. 3A at Tab J).

The IJ rendered an oral decision on February 1, 2016. *Id.* at 99 (IJ Dec. at 1). The IJ found both petitioners to be credible witnesses, but gave little evidentiary weight to the parts of their testimony that were based on unsupported speculation. *Id.* at 109 (IJ Dec. at 11). The IJ found that Lopez-Diego's application for asylum was untimely, but analyzed both Lopez-Diego's and Ramirez-Lopez's applications as if neither was time-barred. *Id.* at 110 (IJ Dec. at 12). The IJ found that the petitioners had not established past persecution or a well-founded fear of future persecution. *Id.* at 111–13 (IJ Dec. at 13–15). Consequently, the IJ denied the petitioners' applications for asylum. *Id.* at 115 (IJ Dec. at 17). Because the burden of proof for withholding of removal is higher than that for an asylum application, the IJ also denied the petitioners' application for withholding of removal. *Id.* Finally, the IJ found that neither petitioner had suffered physical harm and they could safely relocate within Honduras, and

therefore their application for protection under the CAT was also denied. *Id.* at 116 (IJ Dec. at 18).

The petitioners appealed the IJ's decision to the BIA. On January 18, 2017, the BIA dismissed their appeal. *Id.* at 6 (BIA Dec. at 4). The BIA first found that the IJ's determination that the petitioners (respondents below) had not established past persecution or a well-founded fear of future persecution was not clearly erroneous.[3] *Id.* at 3 (BIA Dec. at 1). Second, the BIA affirmed the IJ's denial of withholding of removal because they had not satisfied the lower burden of proof required for asylum. *Id.* at 6 (BIA Dec. at 4). Finally, the BIA affirmed the IJ's denial of protection under the CAT. *Id.* The BIA did not address the IJ's finding that Lopez-Diego's application for asylum was untimely because the IJ had considered the merits of her underlying claim. *Id.* at 3 (BIA Dec. at 1 n.2).

## II. DISCUSSION

### A. Standard of Review

When "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "[W]e are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion." *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016) (quoting *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015)). "The agency's findings of fact are reviewed for substantial evidence, and

---

[3]The BIA decision discussed only the IJ's determinations as to Lopez-Diego and treated Ramirez-Lopez's application as wholly derivative of his mother's application. *Id.* at 3 (BIA Dec. at 1 n.1).

questions of law are reviewed de novo." *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). Under the substantial-evidence standard, "we will not reverse a factual determination . . . unless we find 'that the evidence not only supports a contrary conclusion, but *compels* it.'" *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)); 8 U.S.C. § 1252(b)(4)(B). To the extent that the IJ found the petitioners credible, we treat the representations made in their applications and testimony as true. *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011).

## B. Application for Asylum

"The Secretary of Homeland Security or the Attorney General may grant asylum to an alien . . . [if either] determines that such alien is a refugee . . . ." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as an alien "who is unable or unwilling to return" to her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42). The applicant for asylum bears the burden of proof to establish that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i). Furthermore, in order to do so, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.*

Persecution is not statutorily defined, but it is well-established that "physical harm is not an essential feature of persecution." *Stserba*, 646 F.3d at 972. "Nonphysical persecution can take various forms, including 'the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment[,] or other essentials of life.'" *Id.* (alteration

7

in original) (quoting *In re T-Z-*, 24 I. & N. Dec. 163, 171 (B.I.A. 2007)). Persecution does, however, "require[] more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010) (quoting *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005)). The types of harm that rise to the level of persecution, as opposed to harassment, include: "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Stserba*, 646 F.3d at 972 (quoting *Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010)). Finally, "the infliction of harm or suffering [must be] by the government, or persons the government is unwilling or unable to control." *Khalili*, 557 F.3d at 436 (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004)).

If the asylum applicant establishes past persecution, then she is presumed to have a well-founded fear of persecution. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294 (6th Cir. 2016). If the asylum applicant cannot show evidence of past persecution, she must instead prove her well-founded fear of future persecution.

> To do this, the applicant must show that he "actually fear[s] that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable." [*Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005)] (internal quotation marks omitted). "The applicant need not demonstrate that he will probably be persecuted if returned because one can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *Selami v. Gonzales,* 423 F.3d 621, 625 (6th Cir.2005) (internal quotation marks omitted).

*Id.*

The BIA held that Lopez-Diego had not established that she had suffered past persecution on account of a protected ground. A.R. at 4 (BIA Dec. at 2). That decision was supported by substantial evidence. Lopez-Diego testified, both on direct and cross examination, that her family's ancestral home was taken by the government because the home was on the site of a planned tourist development. *Id.* at 226–27 (Removal Proceeding Tr. at 84–85) ("The only reason [the government took the land] was to build resorts . . . ."); *see also id.* at 197 (Removal Proceeding Tr. at 55). The petitioners did not establish that a "central reason" behind their eviction was the fact they were Garifuna. Furthermore, the State Department Country Report for Honduras details efforts by both the Honduran government and the Inter-American Court of Human Rights to address claims by various minority groups that their property rights have been violated. *Id.* at 374 (Resp't Ex. 3A at Tab J at 11). Consequently, the record supports the BIA's conclusion that the petitioners' eviction was at most a civil dispute rather than persecution.[4]

Additionally, there is substantial evidence in the record supporting the BIA's conclusion that the discrimination faced by the petitioners as Garifunas does not rise to the level of persecution. Lopez-Diego testified that neither she nor her relatives remaining in Honduras had been physically harmed because they were Garifunas. *Id.* at 226, 228 (Removal Proceeding Tr. at 84, 86). Additionally, although Lopez-Diego testified that her employment provided insufficient income for her to support her family after the death of Ramirez, her testimony also revealed that both she and Ramirez were able to find jobs. *Id.* at 206–08 (Removal Proceeding

---

[4]Because the record supports the conclusion that the petitioners' eviction was not on account of a protected ground, we do not reach the question of whether the BIA was correct to hold that an alien cannot establish persecution if the property confiscated by the government was owned by a family member as opposed to the alien herself.

Tr. at 64–66). Economic deprivations must be sufficiently severe in order to constitute persecution. *Stserba*, 646 F.3d at 976; *see also Ljuljdjurovic v. Gonzales*, 132 F. App'x 607, 612 (6th Cir. 2005) (holding that aliens' loss of job, denial of credit, and failure of a business due to the lack of customers were insufficient to constitute economic persecution). Here, the economic deprivations the petitioners have established do not rise to the level of economic persecution in terms of their severity.[5]

The record also does not compel a contrary conclusion to the BIA's holding that the petitioners have not established a well-founded fear of future persecution. The IJ found credible Lopez-Diego and Ramirez-Lopez's fears about further directed violence from the unidentified killers of Ramirez and generalized violence due to the high crime rate. *Id.* at 109 (IJ Dec. at 11). Persecution, however, is the infliction of harm "by the government, or persons the government is unwilling or unable to control." *Khalili*, 557 F.3d at 436 (quoting *Pilica*, 388 F.3d at 950). "Petitioners must have been 'specifically targeted by the government for abuse based on a statutorily protected ground,' not merely victimized 'by indiscriminate mistreatment' or 'random crime.'" *Stserba*, 646 F.3d at 972 (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)). Because the petitioners have not shown that the violence they fear is from the government or from parties the government is unwilling or unable to control, they have not established that they fear future persecution. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670–71 (6th Cir. 2013) ("General conditions of rampant gang violence alone are insufficient to support a

---

[5]Furthermore, the petitioners did not produce any evidence that any economic discrimination they faced was due to the government or to persons the government was unwilling or unable to control, as opposed to discrimination by private parties.

claim for asylum."); *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015) ("[W]idespread crime and violence does not itself constitute persecution on account of a protected ground.").

Because substantial evidence supports the BIA's determination that the petitioners failed to establish a sufficient nexus between their status as Garifunas and the past harm and future harm they endured or fear, we deny their petition for review regarding their claim for asylum.

## C. Withholding of Removal

An applicant for withholding of removal must demonstrate that her "life or freedom would be threatened in that country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The alien must establish a 'clear probability of persecution,' meaning that 'it is more likely than not that the alien would be subject to persecution.'" *Al-Ghorbani v. Holder*, 585 F.3d 980, 993–94 (6th Cir. 2009) (quoting *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984)). "It is more difficult to obtain withholding of removal than it is to obtain asylum" because the standard of proof for withholding of removal is more stringent than that for asylum. *Bi Qing Zheng*, 819 F.3d at 294. "Therefore, if an applicant fails to satisfy the lower burden of proof for asylum, it follows that he also fails to satisfy the higher burden required for withholding of removal." *Id.* Because Lopez-Diego and Ramirez-Lopez have not met the requirements for establishing their eligibility for asylum, they cannot meet the heightened requirements for withholding of removal. Consequently, we deny their petition for review regarding their withholding of removal application.

**D. Relief Under the CAT**

To qualify for protection under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see also Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006). "'Torture,' in any of its myriad manifestations, must entail the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). "[T]orture may be based on any reason so long as it is inflicted by, instigated by, or done with the consent or acquiescence of a government official or someone acting in [an] official capacity." *Hamida v. Gonzales*, 478 F.3d 734, 741 (6th Cir. 2007). In other words, unlike a claim for asylum or withholding of removal, "[n]o protected-ground nexus is required" to qualify for protection under the CAT. *Haider*, 595 F.3d at 289.

The record evidence does not compel a conclusion contrary to the BIA's holding that Lopez-Diego "has not shown that it is more likely than not that she will be tortured if she returns to Honduras." A.R. at 6 (BIA Dec. at 4). First, Lopez-Diego testified that neither she nor her relatives remaining in Honduras had ever been physically harmed, let alone tortured. *Id.* at 226, 228 (Removal Proceeding Tr. at 84, 86). Second, the petitioners did not show that any physical harm they feared was more likely than not to be "inflicted by, instigated by, or done with the consent or acquiescence of a government official or someone acting in [an] official capacity." *Hamida*, 478 F.3d at 741. "The CAT does not afford protection to torturous acts inflicted by

12

wholly private actors." *Zaldana Menijar*, 812 F.3d at 501. Thus, the record supports the BIA's conclusion that the petitioners failed to meet the requirements to qualify for protection under the CAT; we therefore deny their petition for review regarding their application for relief under the CAT.

## III. CONCLUSION

Because there is substantial evidence in the record supporting the BIA's decision that Lopez-Diego and Ramirez-Lopez have failed to satisfy their burden of proof for asylum, withholding of removal, and protection under the CAT, we **DENY** their petitions for review of the BIA's decision.