RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

A. K., a Minor by and Through his Parents, Guardians, and Next Friends, Timothy Kocher and Teresa D. Kocher; TIMOTHY KOCHER; TERESA D. KOCHER,

  *Plaintiffs-Appellants/Cross-Appellees*,

  *v.*

DURHAM SCHOOL SERVICES, L.P.,

  *Defendant-Appellee/Cross-Appellant*.

┐
│
│
│
│
│   Nos. 18-6008/6020
│
│
│
│
│
┘

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:15-cv-02663—John Thomas Fowlkes, Jr., District Judge.

Argued: August 8, 2019

Decided and Filed: August 11, 2020

Before: CLAY, LARSEN, and READLER, Circuit Judges.
───────────────

## COUNSEL

**ARGUED:** John R. Holton, HOLTON LAW FIRM, PLLC, Memphis, Tennessee, for Appellants/Cross-Appellees. Melissa A. Murphy-Petros, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Chicago, Illinois, for Appellee/Cross-Appellant. **ON BRIEF:** Timothy R. Holton, HOLTON LAW FIRM, PLLC, Memphis, Tennessee, for Appellants/Cross-Appellees. Melissa A. Murphy-Petros, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Chicago, Illinois, John I. Houseal, Jr., Andre B. Mathis, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellee/Cross-Appellant.

  LARSEN, J., delivered the opinion of the court in which READLER, J., joined. CLAY, J. (pp. 11–17), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

LARSEN, Circuit Judge.    This is a tragic case in which a thirteen-year-old boy was struck by a truck while riding his bicycle to school after he missed his school bus.  The boy's parents, Timothy and Teresa Kocher (the Kochers), acting on behalf of their son, sued the bus company, Durham School Services, for negligence.  Although a jury found Durham negligent, the jury also found the Kochers more than 50 percent responsible for the accident.  Accordingly, Tennessee's comparative negligence law barred the Kochers from recovering.  The Kochers appealed, challenging the district court's exclusion of evidence and expert testimony.  For the reasons below, we AFFIRM the judgment of the district court and DISMISS Durham's cross appeal as moot.

I.

On October 23, 2014, A.K., a thirteen-year-old student at Appling Middle School in Bartlett, Tennessee, missed his school bus.  Linda Threat, an employee of Durham School Services, was the bus driver.  A.K.'s school bus arrived at his stop at 6:28 a.m.—seven minutes before its official scheduled time of arrival.  After A.K. arrived at his designated stop and realized that the bus was gone, he ran back home to retrieve his bicycle so that he could ride it to school.  A.K.'s father heard him return to the house and heard A.K. shout that he was going to ride his bike to school.  While riding to school, A.K. was struck by a truck and suffered severe injuries as a result.

The Kochers, acting on behalf of their son, sued the truck's driver in Tennessee state court but settled their claim with him.  They also sued Durham in state court, alleging negligence and seeking compensatory and punitive damages.  Durham removed the action to the Western District of Tennessee pursuant to 28 U.S.C. § 1332.

The Kochers filed a motion for partial summary judgment, asking the district court to find that certain facts were not in dispute.  The district court denied the motion.  Later, Durham moved for summary judgment.  It argued that it did not owe a duty of care to A.K. because A.K.

never came into Durham's custody or control on the date of the accident, and that even if it did owe a duty to A.K., the duty ended once A.K. returned home, to the custody and care of his father. Durham also argued that it was not the proximate cause of A.K.'s injuries. The district court denied Durham's motion.[1]

The case proceeded to trial. At trial, the Kochers' basic theory was that Durham could have prevented Threat from leaving A.K.'s bus stop before the scheduled departure time had it followed its own policies and procedures. They argued that the early departure breached a duty of care owed to A.K. and was the proximate cause of A.K.'s injuries. Durham maintained that it was not the proximate cause of A.K.'s injuries, and the Kochers and the truck driver were at fault. Durham argued that the Kochers had failed to protect A.K. from an unreasonable risk of harm by allowing him to ride his bike, given that it was dark outside, the roads were busy, and A.K. lacked proper safety equipment, and that the truck driver had failed to adjust to the conditions that led to the accident, including the condition of his truck and the poor visibility in the pre-dawn hours. The jury found Durham negligent, but pursuant to Durham's affirmative defense of comparative negligence, allocated fault as follows: 56 percent to the Kochers, 28 percent to the driver of the pick-up truck, and 16 percent to Durham. Because the Kochers were more than 50 percent at fault, the court entered judgment in Durham's favor, as required by Tennessee law. *See* Tenn. Code Ann. § 29-39-102(b). The trial court denied the Kochers' motion for a new trial, and they timely appealed.

II.

The Kochers take issue with two evidentiary rulings below: the district court's ruling preventing them from introducing Durham's employee handbook or testimony regarding its internal policies and procedures, and the district court's exclusion of its expert witness.

*Internal Policies and Procedures.* The district court prevented the Kochers from admitting Durham's employee handbook into evidence or eliciting testimony about its contents or other internal Durham policies. In a pre-trial motion, Durham had argued that Tennessee law

---

[1]In this court, Durham filed a conditional cross appeal limited to the duty question; they did not appeal on the question of proximate cause, and so that question is not before us. Because we affirm the district court's judgment in favor of Durham, we dismiss the cross-appeal as moot.

did not allow the "use of 'guidelines' and 'safety rules' to establish the standard/duty of care." The thrust of Durham's argument seemed to be that the jury might mistakenly equate a breach of Durham's internal policies and procedures with breach of a legal duty. Citing *Johnson v. Rowsell*, No. M2009-00731-COA-R3-CV, 2009 WL 3460365 (Tenn. Ct. App. Oct. 27 2009), the district court agreed with Durham, concluding that, under Tennessee law, a company's internal policies and procedures do not "create[] a legal duty" and might not even be "admissible for any purpose whatsoever." The Kochers say that this ruling was an abuse of discretion because, on their reading of Tennessee caselaw, a company's internal policies may be admitted for many purposes, including to show negligence. Durham disagrees. We need not decide whether the trial court correctly interpreted the Tennessee cases[2] because, even if it was error for the district court to exclude Durham's internal policies, the Kochers have not shown any effect on their substantial rights. *See* Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."); Fed R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); 28 U.S.C. § 2111 ("On the hearing of any appeal . . . , the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

First, a word on who bears the burden of showing harm. Because this is a civil case, the Kochers, as "the party that 'seeks to have a judgment set aside because of an erroneous ruling[,] carr[y] the burden of showing that prejudice resulted.'" *Shinseki v. Sanders*, 556 U.S. 396, 409, 411 (2009) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)). We note that before the Supreme Court's decision in *Shinseki*, this court in *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009), affirmed the *Kotteakos* standard as the rule governing harmless-error analysis in civil cases.

---

[2]Whether evidence is admissible in federal court is ordinarily a question of federal law, even in a diversity case. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000). But some state law rules that "result[] in the exclusion of evidence, . . . in fact serve substantive state policies or are intimately bound up with state created rights and obligations." 19 Charles Alan Wright et al., *Federal Practice and Procedure* § 4512 (3d ed. supp. 2019). These state "'substantive rules of evidence,' . . . have been enforced in federal court" in appropriate cases. *Id.* (collecting cases). Both parties in this court, and in the district court below, assumed that Tennessee law governed the admissibility question. We have no reason to question that assumption because we ultimately conclude that the Kochers have not shown harm, as required by Federal Rule of Evidence 103 and Federal Rule of Civil Procedure 61, which clearly apply regardless of the source of the underlying evidentiary rule.

*See Kotteakos v. United States*, 328 U.S. 750, 765 (1946). *Kotteakos*, which is used to assess the harm caused by non-constitutional trial errors in criminal cases, places the burden on the government (typically, the appellee) to show that an error was harmless. *Id.* at 760. In a criminal case, in other words, the tie goes to the criminal defendant.

To the extent that *Beck* and subsequent published decisions of this court, *see, e.g.*, *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 676 (6th Cir. 2010); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409–10 (6th Cir. 2006), endorsed this allocation of the burden for civil cases, the rule does not survive *Shinseki*.**[3]** In *Shinseki*, the Supreme Court expressly rejected the idea of placing the burden of proving harmlessness on the appellee in a civil case, announcing that "we have placed such a burden on the appellee only when the matter underlying review was criminal." 556 U.S. at 410–11 (citing *Kotteakos*, 328 U.S at 760). In other words, *Shinseki* holds that in a civil case, the tie goes to the verdict.**[4]**

---

**[3]**Our cases have not been consistent in terms of whether to presume harm from error. Some seem to presume that errors are harmful. *See Tamraz*, 620 F.3d at 676 ("Having concluded that Dr. Carlini's causation testimony exceeded the permissible boundaries of Rule 702, we *must reverse unless* we can 'say, with fair assurance, . . . that the judgment was not substantially swayed by the error.'" (quoting *Mike's Train House*, 472 F.3d at 409–10) (emphasis added) (alteration in original)); *see also Griffin*, 689 F.3d at 599 ("This evidence may not have swayed the jury if it had been admitted, but we cannot say, with fair assurance that it could not possibly have done so." (internal quotation marks omitted)); *Mike's Train House*, 472 F.3d at 410 (remanding for a new trial because it was "impossible to conclude with any certainty that [the error] did not sway the jury's verdict"). Others, including *Beck* itself, give mixed signals. *See Beck*, 377 F.3d at 635–36 (stating that "[t]his version would seem to require *an appellant* to do more than merely deprive the appellate court of a 'fair assurance' that the error was *not* outcome-determinative, as under *Kotteakos*" but also stating that "[i]f we do not have a 'fair assurance' that the trial's outcome was not altered by the error, *we must reverse*." (first and third emphasis added)).

**[4]***Shinseki* involved appellate review of an agency decision. But the Supreme Court left no doubt that the rule it announced applied also in "ordinary civil case[s]." *Shinseki*, 556 U.S. at 407, 411 ("We have no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative cases. Consequently, we assess the lawfulness of the [lower court's] approach in light of our general case law governing application of the harmless-error standard."). Before *Shinseki*, nearly every circuit already followed *Shinseki*'s "tie-to-the-verdict" rule in civil cases. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 102 (1st Cir. 1997); *Tesser v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004); *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088, 1093 (5th Cir. 1981); *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 564–65 (7th Cir. 2006); *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008); *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir. 1999); *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007); *Frank R. Jellef, Inc. v. Braden*, 233 F.2d 671, 680 n.22 (D.C. Cir. 1956). Nearly all those that did not, applied it afterward. *See Morgan v. Covington Twp.*, 648 F.3d 172, 180 (3d Cir. 2011) (citing *Shinseki*, 556 U.S. at 410); *see also Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136, 142 (4th Cir. 2019) (citing *Shinseki*, 556 U.S. at 410). After *Shinseki*, only the Ninth Circuit seems still to apply the rule that the beneficiary of an error in a civil case bears the burden of showing the absence of harm. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464–65 (9th Cir. 2014).

Accordingly, the Kochers must demonstrate that any errors affected their substantial rights. *See* Fed. R. Evid. 103(a); Fed R. Civ. P. 61; 28 U.S.C. § 2111. The Kochers have not shown this. First, the evidence the Kochers deem critical, the employee handbook and any other written policies, is nowhere in the record, so we have no way to review for ourselves what these documents say.[5] At oral argument, the Kochers represented that Durham's "policy says . . . that you must run the route as scheduled and a bus driver is never allowed to change a route without approval." Durham does not dispute that assertion. Even so, we still cannot conclude that the Kochers have shown prejudice from the policies' exclusion.

The trial court denied the Kochers' motion for a new trial on the ground that any evidentiary error was harmless because the jury *did* find Durham negligent, even without having access to the employee handbook or testimony regarding Durham's internal policies. On appeal, the Kochers seem to acknowledge this point. Accordingly, they emphasize that, because this was a comparative fault case, "the jury was not only tasked with finding out whether Durham was negligent, but also how negligent they were in comparison with the Plaintiffs and the non-party [truck driver]."

The Tennessee Supreme Court has established a nonexclusive set of factors for juries to consider when "apportioning fault between the negligent parties." *Eaton* v. *McLain*, 891 S.W.2d 587, 593 (Tenn. 1994). The Kochers center their appellate argument around these factors. They argue that, without the handbook or other evidence about Durham's internal policies, the jury could not properly assess two of the *Eaton* factors: "the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it" and

---

[5]At oral argument, counsel for the Kochers stated that, "[t]o [his] knowledge, [the policies] were introduced." And counsel for Durham said she believed the policies and procedures were filed as sealed attachments to the summary judgment filing but were never introduced to the district court as an official offer of proof. But the policies are not attached to Durham's motion for summary judgment. *See* R. 190; R. 191 (attaching, *inter alia*, a document entitled, *Pupil Transportation Services Agreement*, and a document entitled, *Bartlett City Schools' Transportation Rules*, which do not contain the employee handbook or other policies and procedures that the parties describe). Although Ted Finlayson Schueler's expert witness report—attached as a sealed exhibit to Durham's motion to exclude his expert testimony—recites excerpts from the *Durham Employee Handbook* and the *Durham Transportation Procedures 1*, we still cannot find the policies themselves in the record.

"the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff."[6] *See id.* at 592.

The Kochers face several obstacles in showing that they were harmed with respect to these factors. First, they did not make this argument to the trial court. Neither in arguing for the relevance of the handbook at trial, nor in their new trial motion did the Kochers alert the trial court to these *Eaton* factors, or argue how the excluded evidence would have helped the jury evaluate them. Instead, they argued primarily that the handbook would have been relevant to proving negligence, a conclusion that the jury reached in any event. As for the handbook's relevance to proving Durham's *comparative* negligence, the motion for new trial offers only this conclusory assertion: "Evidence about the policies and procedures of Durham would have likely caused the jury to find Durham to be significantly more at fault when their own policies and procedures showed that their conduct was unreasonable under the circumstances." R. 315, PageID 3910. The Kochers neither developed this argument, nor offered any citation in support; they have therefore forfeited "the right to have the argument addressed on appeal." *See Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996) ("[V]ague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal.").

Second, the jury was never instructed that it was to assess Durham's comparative fault in light of the *Eaton* factors the Kochers now press on appeal. The jury was merely instructed that it should "weigh the respective contributions of the parties and non-parties, considering the conduct of each as a whole," "[d]etermine whether one made a larger contribution than the other(s)," "[a]nd, if so, to what extent it exceeds that of the other(s)." It does not appear that the Kochers objected to this instruction or asked that the jury be instructed on any of the *Eaton* factors, though the Tennessee Supreme Court indicated in *Eaton* itself that "[t]he trial court should . . . include the factors, if applicable, in its instructions to the jury on the fault apportionment question." *Eaton*, 891 S.W.2d at 593. Nor did the Kochers suggest, either here or

---

[6]The Kochers did not argue that the excluded evidence would have helped the jury assess the latter *Eaton* factor until their reply brief. Ordinarily, we do not consider arguments raised for the first time in an appellant's reply brief, *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004); however, whether or not we consider it here has no effect on the outcome because, as we explain below, the Kochers cannot demonstrate harm.

in the district court, that they would have sought such an instruction had the trial court admitted the policies.

Finally, the jury heard much of what we are told was contained in Durham's handbook. Durham employees Rufus Smith and Greg Newman both testified that Durham expected its school buses to remain at the bus stop until the scheduled departure time unless the child boarded the bus earlier. Smith, a safety training supervisor for Durham, testified that parents have an expectation that the school bus will arrive at its designated stops on time, and if it arrived early, Smith would expect the bus driver not to depart before the scheduled departure time, unless the child had arrived earlier. Smith acknowledged that early departure from a stop could pose a safety concern. He further testified that "[i]t is mandatory that every [bus driver] that comes to Durham . . . gets an employee handbook," which "keeps the [driver] informed, in tuned and addresses any and all expectations of that [driver] as well as any responsibilities that the company may have to that [driver]." Moreover, Newman, the Regional Manager for Durham, similarly testified that a bus is expected to arrive on time, that its driver cannot change the time of a stop, and that the bus is not to depart earlier than the arrival time unless the child had already boarded the bus.

The Kochers say that there is a difference between presenting the jury with the "expectations" of Durham's supervisors and managers and providing them with its actual, written policies. That could be so. But the question is whether any such difference is sufficiently significant that it would have made a difference in the trial's outcome. The Kochers have not demonstrated that here. Their claim of harm on appeal rests on the policies' significance for assessing comparative fault in light of the *Eaton* factors; but the Kochers neither argued this theory to the district court in seeking admission of the evidence or a new trial, nor sought to have the jury instructed to consider any of the *Eaton* factors. Accordingly, taking all of this into account, we cannot say the Kochers have demonstrated harm from the district court's decision to exclude evidence and testimony regarding Durham's internal policies and procedures.

*Expert Witness.* We turn next to the Kochers' argument that the district court erred by excluding their expert witness, Ted Finlayson Schueler. Given its ruling on the policies and procedures, the district court precluded Schueler from testifying about them. The court also

ruled that the case was "simple," such that expert testimony would not assist the trier of fact.[7] *See* Fed. R. Evid. 702 (stating that for expert testimony to be admissible, it must "help the trier of fact to understand the evidence or determine a fact in issue"). Once again, the Kochers have failed to demonstrate harm from these rulings.

Because the jury found Durham negligent, the Kochers cannot argue that Schueler's testimony was needed to establish breach of a duty or causation. The jury found those elements without Schueler's assistance. So, on appeal, the Kochers again turn to the *Eaton* factors to argue that Schueler's testimony would have helped them establish Durham's greater comparative fault. Relying on the same two *Eaton* factors discussed above, they argue that Schueler would have offered opinions regarding Durham's failure to adequately train its bus drivers and to properly monitor available data regarding its drivers' arrival and departure times. Both, they say, would have assisted the jury in comparing Durham's fault to that of the other actors.

Critically, however, the Kochers failed to offer Schueler's opinions for the purpose of weighing the fault of the parties. They did not argue to the district court that Schueler's testimony would help establish comparative fault, and Schueler admitted that he did not consider any of the other parties' roles in the accident, so he could not have opined directly on the comparative fault question. The Kochers mentioned nothing of the *Eaton* factors to the district court, and as mentioned above, the jury was never instructed to consider these factors. We cannot conclude that the Kochers have shown harm from the district court's exclusion of Schueler's testimony.

---

[7]The district court also ruled that Schueler could not testify to national standards because the duty of care was based on Tennessee law. The Kochers do not meaningfully challenge this ruling. In the Kochers' briefs on appeal, they state that "the national standards and practices of similar operators" are one of Schueler's "numerous relevant opinions that could have assisted the fact finder." But they stop there; they do not explain why the district court erred by concluding that testimony related to national standards was not relevant. Because they fail to develop an argument, we find that the Kochers have forfeited any claim that the district court's ruling on this score was in error. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996))). Schueler's proffered opinions on adequate training and the proper monitoring of the available data were largely based on national industry standards.

\* \* \*

For the reasons stated, we AFFIRM the judgment of the district court.  Because we affirm the judgment of the district court in Durham's favor, we DISMISS Durham's cross appeal as moot.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.  The district court excluded two significant pieces of evidence proffered by Plaintiffs: the Durham School Services pupil transportation policies and the testimony of Plaintiffs' expert witness.  These rulings were not only incorrect, but baffling in that the district court permitted testimony regarding Defendant's expectations for its bus drivers, while excluding the policies on which the testimony was based.  This resulted in the admission of potentially misleading evidence.  Plaintiffs, A.K. and his parents, Timothy and Teresa Kocher, could not test the truth of the testimony regarding the transportation policies, and they were prevented from fully examining the witnesses who testified with knowledge of the policies.  The verdict, precluding Plaintiffs' recovery from Defendant Durham School Services, was likely unreliable because of these significant evidentiary errors.

The majority argues that even if the district court erroneously prevented Plaintiffs from introducing this evidence, the district court's errors were harmless.  However, the majority relies on an incorrect standard for harmless error to reach this conclusion.  In accordance with the correct standard, we cannot say with "fair assurance" that the district court's errors did not "substantially sway[]" the jury's verdict.  *Beck v. Haik*, 377 F.3d 624, 634 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).  The erroneously excluded evidence was highly relevant to Plaintiffs' theory of liability.  Therefore, a new trial was warranted.

The central issue at trial was liability.  The jury found Defendant to be 16% at fault, Plaintiffs to be 56% at fault, and Danny Bearden (who was a non-party) to be 28% at fault under the theory of comparative negligence.  Under Tennessee law, a plaintiff who bears 50% or more of the fault is precluded from recovery, Tenn. Code Ann. § 29-39-102(b), and so a mere 7% of the fault separated Plaintiffs from being able to recover damages.  If we find that the district court committed error, then a new trial would be warranted if the error was not harmless and instead was prejudicial to the movant's "substantial rights."  *Beck*, 377 F.3d at 634 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).  If we "cannot say, with fair assurance,

. . . that the judgment was not substantially swayed by the [district court's] error," then the error was not harmless and a motion for a new trial is to be granted. *Id.*

While the majority declines to decide whether the district court erred, it is plain that the district court misapplied Tennessee law in excluding the Defendant's internal pupil transportation policies. *See Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 833 (Tenn. 2010) (identifying a defendant hospital policy as part of the material evidence presented at trial in a sufficiency of the evidence appeal); *White v. Metro. Gov't of Nashville & Davidson Cty.*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993) ("[C]ompany work rules, while not controlling, are admissible to demonstrate what the company's employees should have done in a particular situation."); *Wilson v. E. Tenn. Human Res. Agency, Inc.*, No. E2010-01712-COA-R3CV, 2011 WL 1642441, at *8 (Tenn. Ct. App. Apr. 29, 2011) (finding relevant to a negligence claim that a van driver "was aware of the [defendant's] policies and procedures" and discussing the contents of those policies). The district court's finding that the internal policies were inadmissible evidence pertinent to Defendant's negligence was clearly in error.

It is self-evident that the larger the district court's error and the slimmer the margin of victory in a given case, the harder it is to "say, with fair assurance," that an error was harmless. *Beck*, 377 F.3d at 634. The district court's error in interpreting Tennessee law was not a minor, isolated occurrence. First, the court refused to admit the written transportation policies into evidence when Plaintiffs proffered them at trial. The district court then refused to admit any testimony by Defendant's employees that even *arguably* went to matters covered by the policies. For instance, after Plaintiffs' counsel told the court that he wished to introduce testimony that "it's a standard that school bus drivers cannot change the time of a bus stop," Defendant's counsel objected, arguing "[a]gain, that comes from – that's the standard because that is Durham's policy that you can't change a bus route . . . . There is no question that it is our internal polic[y]." R. 300, Trial Tr., Page ID# 3055. The court sustained the objection. *Id.* at Page ID# 3057.

Under Tennessee law, the erroneously excluded evidence was directly material to Defendant's fault. As discussed, Tennessee courts have specifically referenced an employee's "aware[ness] of the [defendant employer's] policies and procedures" as evidence of negligent

breach of duty. *Wilson*, 2011 WL 1642441, at \*8.  Evidence of internal policies also bears on the application of the factors that the Tennessee Supreme Court set forth in *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994), which are meant to guide a negligence inquiry and include "the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it."  If a driver was aware of Defendant's policies, then a jury could find that she was on notice as to the risks associated with violating that policy.  *See Wilson*, 2011 WL 1642441, at \*8.

Plaintiffs were never given the opportunity to show that Threat was aware of Defendant's internal pupil transportation policies, or to present the specific provisions of those written policies. Such a showing would have been directly material to Plaintiffs' theories of liability, including that Defendant inadequately trained and supervised Threat, that its conduct fell below "that degree of care and caution as required of a reasonable, prudent bus operator under the same or similar circumstances," and that Defendant should be liable for Threat's negligent conduct.  R. 1-1, Complaint, Page ID# 9–10.  In fact, the jury was instructed that because Threat "was an employee of Durham School Services . . . Linda Threat and Durham School Services should be considered as one in assigning fault."  R. 304, Trial Tr., Page ID# 3620–21.

Defendant argues that the testimony of Rufus Smith (Defendant's safety training supervisor) and Greg Newman (Defendant's regional manager responsible for Memphis and its suburbs) relating to their expectations of bus drivers made the introduction of the specific policies unnecessary and made their exclusion inconsequential.  It is true that Smith and Newman testified to some extent about their expectations of bus drivers.  *See, e.g.*, R. 300, Trial Tr., Page ID# 3059 (Smith testified that he generally "would expect that [a] bus [arriving at a stop early would] wait either for the children to get on at that stop to arrive or until the time that bus schedule says the bus is going to be there"); R. 301, Trial Tr., Page ID# 3210–15 (Newman testified about his "expectation[s]" of drivers and what they are "supposed to" do).

However, neither witness testified that their expectations were communicated to the bus drivers, that the drivers were required to follow those expectations, or what, if any, consequences would result if such expectations were not followed.  This was in part because the district court was unyielding in its erroneous application of Tennessee evidence law.  As noted above, the

district court sustained an objection to Plaintiffs' question as to whether bus drivers are permitted to change the time of a bus stop, because this arguably went to matters already covered by testimony concerning Defendant's internal policies. It is clear under Tennessee law that such questioning was permissible, and Defendant is wrong in asserting that evidence as to what Defendant's written internal policies actually stated was rendered unnecessarily cumulative by Smith and Newman's testimony regarding their expectations of drivers. Instead, Plaintiffs are correct in asserting that "there is a palpable difference between someone's unwritten and unspoken expectations (which is what Newman and Smith testified to) and a written policy." Appellants' Reply Br. at 33. In fact, the district court's decision to exclude the policies themselves impeded the examination of Newman and Smith and rendered their testimony misleading. Evidence that their expectations were, or were not, communicated to drivers in a formal, written policy that the drivers were obligated to follow would have been useful, material information to the jury that could have substantially swayed their verdict. *See Wilson*, 2011 WL 1642441, at *8; *Beck*, 377 F.3d at 634. After all, it had been conceded that Threat was habitually violating Durham's policies by arriving at A.K.'s stop before the scheduled time. And on the day of the accident she not only arrived nearly seven minutes early but waited a mere nine seconds before departing. The district court's decision to exclude the policies appears especially prejudicial under these facts because the jury's designation of just 7% less fault to Plaintiffs would have allowed them to recover.

Similarly, testimony by Plaintiffs' expert would have assisted the jury in understanding the policies and, because the expert would have testified more generally concerning the pupil transportation industry, his testimony would have gone to the issue of Durham's negligence in not ensuring that driver Threat complied with the policies. If such testimony had been admitted, the jury would have more fully understood the technologies involved in pupil transportation, including other pupil transportation and safety options available to Durham, and would have received an expert appraisal of those options. Such knowledge is not common to lay people and so the expert's testimony would have informed the jury's consideration of "the reasonableness of the party's conduct in confronting a risk" and "the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff." *Eaton*, 891 S.W.2d at 592.

Rather than address these points of law, the majority seeks to dismiss Plaintiffs' argument because Plaintiffs did not specifically recite the *Eaton* factors when they sought to introduce the policies at trial and Plaintiffs did not request the judge to specifically instruct the jury on the *Eaton* factors. Nevertheless, Plaintiffs clearly argued that the policies in question went not only to the issue of whether Durham was negligent, but to how negligent it was as well. For example, Plaintiffs argued that "Defendants have yet to offer any reason why weighing Durham's negligence . . . should be done without the benefit of knowing what Durham's policies and procedures were." R. 315-1, Pls.' Mot. for New Trial, Page ID# 3907. The majority erroneously attempts to reduce Plaintiffs' claim to one based entirely on *Eaton*; but *Eaton* merely provides greater support for Plaintiffs' position regarding comparative negligence.

Additionally, Plaintiffs persuasively argued below that "[e]vidence about the policies and procedures of Durham would very likely have caused the jury to find Durham to be significantly more at fault when their own policies and procedures showed that their conduct was unreasonable under the circumstances." *Id.* at Page ID# 3910. In arguing that this sentence was insufficient to preserve Plaintiffs' argument, the majority conveniently ignores the statement that immediately preceded it: "The unfair prejudice Plaintiffs experienced under this Court's rulings on policies and procedures is especially palpable when considering that the jury's verdict found Durham negligent and at fault, and so the question became how negligent and at fault were they?" *Id.* Far from constituting a conclusory assertion of prejudice, this argument connects Plaintiffs' thorough discussion of Tennessee evidence law to the relevance of Durham's policies.

With respect to their expert, Plaintiffs argued below that the expert "had multitudes of opinions about what is reasonable and ordinary care under the circumstances. These opinions are relevant and go to the heart of the case. These opinions would also have helped the jury understand the facts of the case and the pupil transportation industry generally." *Id.* at Page ID# 3916. Therefore, this Court should consider Plaintiffs' arguments in relation to *Eaton*, even though *Eaton* was not specifically cited in the district court. And, as discussed above, Plaintiffs' arguments make clear the gravity of the court's errors. Rather than the district court's evidentiary rulings being harmless, correct evidentiary rulings from the district court may have

produced an outcome at trial in Plaintiffs' favor.  Consequently, remand is warranted for a new trial in which all admissible evidence could be presented to the jury.

The majority also articulates a standard for harmless error that is at odds with our well-established precedent.  We have repeatedly applied the "fair assurance" standard: if we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the [district court's] error," then the error was not harmless and a motion for a new trial should be granted. *Beck*, 377 F.3d at 634.  The majority simply asserts that "the Kochers must demonstrate that any errors affected their substantial rights," without explaining how the Kochers could accomplish that.  *Ante* at 6.

In doing so, the majority conflates the Supreme Court's holding in *Shinseki v. Sanders*, 556 U.S. 396 (2009), regarding the allocation of the burden of proving harmlessness, with the content of that burden.  The Supreme Court in *Shinseki* said nothing about the standard we apply to determine whether there was prejudice.  While the Court did indicate that the appellant in a civil case bears the burden of demonstrating prejudice in a motion for a new trial, this Court has long held precisely that.  *See Clarksville-Montgomery Cty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991).

Moreover, contrary to the majority's assertion of "mixed signals," *ante* at 5 n.3, our cases have consistently applied the "fair assurance" test to determine whether any harm resulted from the district court's error.  In fact, *Beck* merely reaffirmed this test as the proper standard. 377 F.3d at 635 ("Th[is] is the traditional formulation of the harmless error standard, deriving from *Kotteakos v. United States*[, 328 U.S. 750 (1946)] . . . . We have applied this standard in civil cases.").  This reaffirmation was necessary because after we established the "fair assurance" test in *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152 (6th Cir. 1988), *abrogated on other grounds by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), several panels of this Court erroneously applied the stricter "different outcome" standard for harmless error.  *Beck*, 377 F.3d at 635; *see also id.* (collecting cases applying the "different outcome" standard).  The "different outcome" test provided: "Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004)

(quoting *Morales v. American Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998)). *Beck* rightly declined to follow those cases that ignored the "fair assurance" test established in *Schrand*, a binding, published case. *Beck*, 377 F.3d at 635; *see also, e.g.*, *Salmi v. Sec'y Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (holding that prior published opinions of this Court remain binding on future panels "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision"). We then found that we did not have a "fair assurance" that the exclusion of evidence did not substantially sway the verdict below and thus reversed and remanded for a new trial. *Beck*, 377 F.3d at 645.[1]

Because *Shinseki* did not address which of these standards is correct, we are bound by our decision in *Schrand* and must use the "fair assurance" test. The majority misreads the Supreme Court's opinion in *Shinseki* and arrives at a nebulous standard for harmless error contrary to our controlling case law. As the foregoing analysis illustrates, under the proper "fair assurance" test, the district court's mistakes were far from harmless.

Ultimately, the district court deprived Plaintiffs of a fair trial by refusing to admit crucial material evidence in the form of Defendant's transportation policies and by excluding Plaintiffs' expert witness testimony. The gravity of the district court's errors and the slim margin of Plaintiffs' loss make it impossible to say, "with fair assurance," that the error was harmless. *Beck*, 377 F.3d at 634. Plaintiffs are entitled to a new trial to present their full case to a jury and to seek recovery for A.K.'s tragic accident. I therefore respectfully dissent.

---

[1]Contrary to the majority's contention, none of the cases it cites that used the "fair assurance" test placed the burden of showing harmlessness on the appellee in civil trials. On the contrary, in *Beck*, this Court observed that applying the erroneous "different outcome" test "would seem to require an *appellant* to do more than merely deprive the appellate court of a 'fair assurance' that the error was *not* outcome-determinative, as under *Kotteakos*." 377 F.3d at 635 (first emphasis added); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012) (citing Fed. R. Evid. 103(a) (explaining that a party challenging the exclusion of evidence must show that "the error affects a substantial right")); *Mike's Train House, Inc. v. Lionell, LLC*, 472 F.3d 398, 409–10 (6th Cir. 2006); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 676 (6th Cir. 2010).