RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FRANCISCA HERNANDEZ-HERNANDEZ; A. L. H. H.,

*Petitioners*,

*v.*

MERRICK B. GARLAND, Attorney General,

*Respondent*.

> No. 21-3210

On Petition for Review from the Board of Immigration Appeals.
Nos. A 209 290 827; A 209 290 828.

Decided and Filed:  October 4, 2021

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

───────────────

### COUNSEL

───────────────

**ON BRIEF:**  Kirby J. Fullerton, CARMANFULLERTON, PLLC, Lexington, Kentucky, for Petitioners.  Nancy E. Friedman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

### OPINION

───────────────

LARSEN, Circuit Judge.  The Department of Homeland Security (DHS) initiated removal proceedings against Francisca Hernandez-Hernandez and her daughter.  Hernandez applied for asylum and withholding of removal.[1]  The immigration judge (IJ) and the Board of

─────────────

[1]She filed an asylum claim on behalf of her daughter as well.  That claim is derivative of Hernandez's, however, so we do not discuss the daughter's claim separately.  Hernandez originally sought protection under the Convention Against Torture as well, but she has since abandoned the claim.  We do not discuss that claim further.

Immigration Appeals (BIA) denied relief and ordered Hernandez and her daughter removed to Guatemala. We DENY the petition for review.

I.

Hernandez is a native and citizen of Guatemala. She has two minor children. Her daughter, A. L. H. H., is also a native and citizen of Guatemala. Her son, born in 2018, is a U.S. citizen. In mid-July 2016, Hernandez left Guatemala with her daughter and entered the United States without authorization. DHS later initiated removal proceedings against them under 8 U.S.C. § 1182(a)(6)(A)(i).

Before the IJ, Hernandez conceded removability but sought asylum and withholding of removal. Her application alleged that she was a member of the indigenous K'iche', whom the Guatemalan government does not help. She alleged that she and her family are "very poor," that "there are no police or hospital[s] in [their] town," that she "received a very limited public education," and that she was "unable to leave [their] town or obtain good employment to support [her] daughter." She expressed fear that the Guatemalan government would persist in its failure to aid the K'iche' and that she would "not be able to better [her] situation so [she] can support [her] daughter." In sum, Hernandez claimed that she had suffered and feared future "persecution in the form of severe economic disadvantage or the deprivation of liberty, food, housing, employment and other essentials of life" on account of her status as an indigenous K'iche' woman.

Hernandez testified before the IJ. She explained that she came to the United States for economic reasons and to secure a better life for her daughter. In Guatemala, she attended school only through the fourth or fifth grade. She grew up poor; her family farmed for a living. When she turned twelve, she began farming with her dad. For a while, she worked as a housekeeper in another city several hours away from her family. But she eventually left that job because the wages were low, and she feared crime in the city. She claims that the only jobs in her hometown are intermittent, agricultural, and pay little. If she goes back, she believes that she could only get a job farming due to her lack of education.

Although the IJ found Hernandez credible, he denied her claims for relief and ordered her removed from the country. She appealed to the BIA, which affirmed the IJ's decision. Hernandez petitions for review of the BIA decision.

II.

"Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quotation marks omitted). But to the extent the BIA adopted the IJ's reasoning, we also review the IJ's decision. *Id.* We review questions of law de novo but give "substantial deference . . . to the BIA's interpretation of the INA and accompanying regulations." *Id.* (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review factual findings under the highly deferential substantial evidence standard. *Id.* The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). In view of the IJ's unchallenged credibility determination, we accept the substance of Hernandez's testimony.

Asylum and withholding of removal claims face similar requirements.[2] For asylum, an alien must show that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is someone "who is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011). Similarly, for withholding of removal, an alien must show that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

The immigration laws do not define "persecution." Yet courts and the BIA agree that persecution need not be physical. "Economic deprivation" can amount to persecution "when the resulting conditions are sufficiently severe." *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n.9 (6th Cir. 2004). But any "economic disadvantage" or "deprivation" must be "deliberate[ly]

---

[2]On appeal, Hernandez does not treat her withholding of removal claim any differently than her asylum claim. So for the purposes of this appeal, we consider them together.

impose[d]." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011) (quoting *In re T-Z-*, 24 I. & N. Dec. 163, 171 (B.I.A. 2007)). And there's "a state-action element: A country's government must either directly inflict harm on an immigrant or be unable or unwilling to control a private party who inflicts the harm." *Ortiz v. Garland*, 6 F.4th 685, 686–87 (6th Cir. 2021).

The BIA concluded that Hernandez had not shown "persecution" because any economic deprivation she suffered or feared was not, and would not be, "deliberately imposed by the Guatemalan government or non-government actors the government is unable or unwilling to control." Substantial evidence supports this conclusion.

Hernandez testified at length to her impoverished conditions. And she says that the Guatemalan government has done little to help its indigenous population, highlighting, for example, the Guatemalan Congress's shelving of a development bill. The State Department report agrees that indigenous Guatemalans are disproportionately poor, "remain largely outside the political, economic, social, and cultural mainstream," have "limited educational opportunities (contrary to law), . . . and [experience] pervasive discrimination." But we have already rejected nearly identical claims, noting that "economic stratification and deficient government support, regrettable though they are, do not establish a cognizable case of persecution." *Pascual v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007). Hernandez, moreover, has provided no evidence that the government (or any non-government actor) imposed any particular economic restrictions on her. As the BIA found, while Hernandez provides evidence that indigenous Guatemalans, including herself, suffer disproportionately from poor socio-economic conditions, that is insufficient on its own to show persecution *by the government*. *See, e.g.*, *Lopez-Diego v. Sessions*, 704 F. App'x 576, 581 n.5 (6th Cir. 2017) (finding that the petitioners failed to establish economic persecution, in part because they "did not produce any evidence that any economic discrimination they faced was due to the government or to persons the government was unwilling or unable to control, as opposed to discrimination by private parties").

Hernandez attempts to find state action in election policies—"tedious voter registration requirements" and the timing of elections—which have the effect of reducing indigenous people's participation in the political process. She posits that low voter participation, in turn,

disincentivizes "the Guatemalan government to invest in education, healthcare, or infrastructure in indigenous areas," resulting in the disproportionate poverty of indigenous populations.

We may leave aside the question whether this causal chain has too many links to amount to economic persecution within the meaning of the INA. Even if not, Hernandez has not shown that the economic effects she felt were set in motion by the government's *deliberate* acts. Hernandez seems to resist the requirement of deliberate government action. She points to our decision in *Stserba*, which recognized that "[g]enerally applicable laws can be the source of a petitioner's persecution." *Stserba*, 646 F.3d at 977. Here, she argues, "the Guatemalan government's election policies apply to everyone, but disproportionately impact indigenous Guatemalans." That may be true. But Hernandez misses the point of *Stserba*. "Generally applicable laws can be the source of a petitioner's persecution," *id.*, but only when they are either applied in a discriminatory fashion or purposefully enacted to produce a discriminatory effect, *see Romeike v. Holder*, 718 F.3d 528, 531 (6th Cir. 2013). It was the latter finding that drove our decision in *Stserba*. There, we concluded that Estonia's policy of invalidating diplomas earned at Russian schools not only affected ethnic Russians disproportionately, but also was "motivated" by hostility to Russian ethnicity. *Stserba*, 646 F.3d at 978. This is a "hard way to show persecution." *Romeike*, 718 F.3d at 531. And Hernandez has not come close; she offers no evidence that ethnic hostility played any part in the formation of Guatemala's election laws. *Stserba* does not help her.

In sum, substantial evidence supports the BIA's conclusion that Hernandez neither suffered, nor has a well-founded fear of, economic persecution by the government. The BIA did not err by denying her claims for asylum and withholding of removal.

\* \* \*

We DENY the petition for review.