NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0219n.06

No. 22-3650

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>
DIANA CRISTINA GALICIA; FRANK<br>
EDUARDO GARCIA-GALICIA,<br>
<br>
     Petitioners,<br>
<br>
v.<br>
<br>
MERRICK B. GARLAND, Attorney General,<br>
<br>
     Respondent.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
FILED<br>
May 09, 2023<br>
DEBORAH S. HUNT, Clerk<br><br>
ON PETITION FOR REVIEW<br>
FROM THE UNITED STATES<br>
BOARD OF IMMIGRATION<br>
APPEALS<br>
<br>
OPINION
</td>
</tr>
</table>

Before: BOGGS, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. Diana Cristina Galicia and her minor son entered the United States unlawfully. After the Department of Homeland Security began removal proceedings, they conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The immigration judge (IJ) and the Board of Immigration (BIA) denied relief. For the reasons stated below, we DENY the petition for review.

I.

Diana Cristina Galicia and her minor son Frank Eduardo Garcia-Galicia, natives and citizens of Guatemala, entered the United States without inspection in April 2014. The Department of Homeland Security initiated removal proceedings against them pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[1] Galicia, through counsel, admitted the factual allegations and conceded

---

[1] Galicia's son was a derivative beneficiary of her asylum application. We refer to the lead petitioner, Galicia, throughout this opinion.

removability. She applied for asylum, withholding of removal, and protection under the CAT. She claimed membership in three particular social groups: (1) "[f]amily members of gang targets;" (2) "kinship to her brother-in-law;" and (3) "[f]amily members of individuals that have killed a gang member."

The IJ held a hearing on her applications for relief. Galicia testified that she fled Guatemala because a man named Marlon and his gang threatened to kill her. The threats, she said, began after a Christmas party in 2013. There, Galicia's nephew, Freddy Fernando Galicia, attempted to thwart an assault by throwing a bottle at the assailant. But he missed and instead struck a member of Marlon's gang. Gang members beat Freddy and chased him to Galicia's house. Galicia let Freddy inside. The gang threw rocks and sticks at the home, breaking windows and threatening to burn the house down if Galicia did not turn Freddy over. Eventually, Galicia's brother-in-law, Rocael Pelaez, came to her assistance. But before the group left, they threatened to return and kill Galicia because she had helped Freddy.

Galicia testified that a day or so later someone threw a rock at her window with a note threatening to rape her son because she had harbored Freddy. She said she received the same threat via text message. A few days later, another rock came through her window with a note threatening to kill her. Galicia believed Marlon was behind these threats.

Galicia said she called the police, but they didn't respond. She explained that she didn't believe the police would help her because her town was "pretty abandoned" and "whatever could happen there, and [the police] would never—they never arrive." Galicia stayed with neighbors or family for the next three weeks.

Galicia testified that she later went to stay with her ex-husband's sister in a town about three hours from her village. While there, Galicia learned that Marlon continued to threaten her

family and had killed two of her mother's dogs. That scared Galicia's host, who believed Galicia's presence posed a threat to her own family, so Galicia decided to come to the United States with her son.

While in the United States, Galicia heard that Marlon was extorting others in town. Shortly thereafter, with assistance from Galicia's brother-in-law, Marlon was arrested. But three days later, Marlon was released from jail, and began threatening Rocael. Rocael eventually killed Marlon. He was not prosecuted, and he moved to Mexico.

Galicia testified that Marlon was solely responsible for the threats to her and her son. She also testified that one of her sisters continues to live in Galicia's hometown and that no one had ever directly threatened her sister. Galicia's mother and other relatives moved to a village about four hours away, where they have not been threatened.

Following Galicia's testimony, the IJ delivered an oral ruling, denying her application for asylum, withholding of removal, and CAT relief. The IJ found Galicia "less than credible." But even assuming Galicia's credibility, the IJ held that Galicia had not demonstrated past persecution, a well-founded fear of future persecution, or that she would likely be harmed if she returned to her native country, all bases for relief. Galicia timely appealed to the BIA. The BIA upheld the IJ's adverse credibility finding and also affirmed the denial of asylum, withholding of removal, and protection under the CAT on the merits. Galicia timely petitioned this court for review.

II.

Where the BIA reviews the IJ's decision and issues a separate opinion, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent that the BIA adopted the IJ's reasoning, we also review the IJ's decision. *Id.* We review legal questions de novo, but we review the agency's factual findings under the substantial-

evidence standard—that is, its findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005)); 8 U.S.C. § 1252(b)(4)(B).

## III.

## A.

Galicia first mounts a constitutional challenge to the agency proceedings. She claims that the BIA denied her due process by failing to provide her with a complete copy of the IJ's decision and by deciding her case based on that incomplete record. The IJ's oral decision incorporated by reference "[a]n addendum stating the standards of law and burdens of proof relevant to the issues before the court" and promised that the addendum would "be served on the parties, and a copy w[ould] be placed in the record of proceedings." But that never happened. The administrative record does not contain a copy of the addendum, and Galicia seems to say that one was never served on her.

> This was error by the BIA:
>
> [T]he government has an "obligation under 8 U.S.C. § 1229a(b)(4)(C) to prepare a reasonably accurate and complete record of the removal hearing." And [the petitioner] had a due-process right to review that record as he prepared his appeal. The Board's failure to provide it therefore created "a defect in the removal proceeding."

*Alvarez-Hernandez v. Garland*, No. 22-3137, 2023 WL 110597, at *1 (6th Cir. Jan. 5, 2023) (citations omitted). To the extent that the BIA believed that "issuing . . . the legal addendum is not necessary," it was mistaken. "The Board should have known better than that." *Id.*

But to show a violation of the Due Process Clause, Galicia has to show more than a defect in the proceedings. She has to show prejudice. *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012). In this context, she must show that the incomplete record kept her from raising, or the BIA

from considering, an argument that "would have changed the outcome of [her] case." *Alvarez-Hernandez*, 2023 WL 110597, at * 2 (quoting *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007)). She cannot do that because, as Galicia explained in her brief to the BIA, her lawyer somehow "happened to have a copy" of the legal addendum while he was preparing Galicia's appeal. Galicia's brief then explained what she believed to be the legal flaws in the addendum, primarily its reliance upon the since-vacated decision, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) (*A-B- I*).[2] Galicia therefore had the benefit of a complete record for her agency appeal. And to the extent Galicia argues that the incomplete record deprived this court of its ability to evaluate her claims, Galicia's remedy was to make an appropriate motion to complete the record before the agency, or perhaps to move to complete the administrative record before us to include the legal addendum already in her possession. *See Yun Yan Ou v. Holder*, 409 F. App'x 482, 483 (2d Cir. 2011) (granting a motion to supplement the record where the agency had considered the materials to be supplemented in the court of appeals); *Open Soc'y Inst. v. USCIS*, 573 F. Supp. 3d 294, 306–10 (D.D.C. 2021). Galicia did not do this. She was not deprived of due process.

B.

The IJ found Galicia "less than credible," and the BIA affirmed this finding. Nonetheless, the IJ and BIA reviewed her claims on the merits and determined that even if she were deemed credible, her claims failed. Because we conclude that substantial evidence supports the agency's

---

[2] For good measure, we note that Galicia's argument regarding *Matter of A-B- I*, is cursory at best. She does not show how the IJ used *Matter of A-B- I*. She simply states, "neither the BIA nor this court can rule out that *Matter of A-B- I* was the basis for the court's analysis and conclusions." But she does not explain how the outcome would have been different even if the IJ had relied on that case. That is insufficient to preserve the claim. *See A.K. ex rel. v. Durham Sch. Servs.*, *L.P.*, 969 F.3d 625, 633 n.7 (6th Cir. 2020) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]." (alterations in original) (quoting *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006))).

merits determinations, we need not consider the credibility finding. *See Ljuljdjurovic v. Gonzales*, 132 F. App'x 607, 613 (6th Cir. 2005).

Claims for asylum and withholding of removal have similar requirements. *See Hernandez-Hernandez v. Garland*, 15 F.4th 685, 688 (6th Cir. 2021). An asylum applicant must show that she qualifies as a "refugee"—a person "unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Juan Antonio v. Barr*, 959 F.3d 778, 789 (6th Cir. 2020) (internal quotation marks and citation omitted); *see* 8 U.S.C. § 1101(a)(42). An applicant for withholding of removal must similarly demonstrate that "her 'life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'" *Hernandez-Hernandez*, 15 F.4th at 688 (quoting 8 U.S.C. § 1231(b)(3)(A)).

The immigration laws do not define "persecution," but the BIA has defined it as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *In re Kasinga*, 21 I. & N. Dec. 357, 365 (B.I.A. 1996)). An applicant who shows past persecution is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). Otherwise, an applicant may establish a well-founded fear of future persecution by showing that she has "a genuine fear and that a reasonable person in her circumstances would fear persecution on account of a statutorily-protected ground if she returned to her native country." *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011).

The BIA concluded that the threats Galicia received did not amount to past persecution. Substantial evidence supports this finding. "Verbal harassment or intimidation, unaccompanied

by any physical punishment, infliction of harm, or significant deprivation of liberty" rarely amounts to persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Threats alone constitute persecution only in exceptional cases where threats are of the "most immediate and menacing nature." *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (citation omitted); *see also Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) (explaining that threats alone constitute persecution only when "so menacing as to cause significant actual suffering or harm" (internal quotation marks and citation omitted)).

Galicia and her son were never physically harmed. They were threatened, to be sure: verbally, one night in 2013; twice through notes attached to rocks thrown at Galicia's house; and once via a text message that Galicia believes came from Marlon. Someone also killed her mother's dogs in an attempt to threaten Galicia. As disturbing as these events surely were, they are not the "[t]ypes of actions that might cross the line from harassment to persecution," such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (citation omitted). Thus, substantial evidence supports the agency's finding that Galicia did not suffer past persecution.

The BIA also determined that Galicia had no objectively reasonable fear of future persecution if she were returned to Guatemala. Substantial evidence supports that finding as well. First, Marlon is dead. And neither Galicia, nor any of her family members still residing in Guatemala, have been threatened since his passing. At least one of Galicia's family members still resides, undisturbed, in her hometown. Galicia's mother and sister live, without threats, in a town four or five hours away. And Galicia herself was not threatened, even when Marlon was alive, when she stayed with her ex-husband's sister a few hours outside of her hometown.

When family members, who are a part of the same social group, have been able to remain in the country unharmed, it is difficult to show a reasonable fear of future persecution. *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 142 (6th Cir. 2016) (citing *In re A–E–M*, 21 I. & N. Dec. 1157, 1160 (B.I.A. 1998)); *see also Kiegemwe v. Holder*, 427 F. App'x 473, 480 (6th Cir. 2011) (noting that "the ability of the [applicant's] family to continue to live in Tanzania without adverse action by the government greatly diminishes the likelihood that [s]he will face harm if [s]he should return"). That is true, even if Galicia would have to relocate within Guatemala to be safe. "An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country . . . ." 8 C.F.R. § 1208.13(b)(2)(ii). Substantial evidence supports the BIA's determination that Galicia has not shown a well-founded fear of future persecution.

Galicia counters that the BIA overlooked the country-conditions reports, which show that gangs kill thousands of Guatemalans each year. As awful as that is, "[g]eneral conditions of rampant gang violence alone are insufficient to support a claim for asylum." *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). And Galicia does not explain how *she* would face persecution, especially in light of her testimony that her family in Guatemala has not been threatened. Marlon is dead, and there have been no threats since his death. The country-conditions reports do not compel the conclusion that Galicia has a well-founded fear of persecution.

Substantial evidence supports the BIA's determination that Galicia failed to show past or future persecution, so her asylum claim fails. And because Galicia failed to meet her burden for asylum, she necessarily fails to meet the higher burden required for withholding of removal. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) ("[A]n applicant who fails to establish his eligibility for asylum necessarily fails to establish his eligibility for withholding of removal.").

C.

To claim protection under the CAT, an applicant must show that she "would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). To qualify for CAT protection, torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

The IJ found that Galicia had not shown that the Guatemalan government would consent or acquiesce to any torture. The BIA affirmed. It noted that "the police responded and detained the gang member responsible for the threats on the only occasion that her family reported the gang member to the police." So the BIA concluded that Galicia's "personal experiences with the authorities undermine her contention that the government would consent or acquiesce to her torture." Substantial evidence supports the BIA's decision.

Galicia contends that the BIA mischaracterizes the evidence: "[T]he police were not 'poised to act'"—their hands were forced by the villagers; and even then, the police released Marlon three days after his arrest. But whether the police were "poised to act," as the agency concluded, or "guilted into acting," as Galicia claims, they did act. And the fact that Marlon was released after three days does not compel the conclusion that authorities were desirous of or willfully blind to any future danger he might have posed. *See* 8 C.F.R. § 208.18(a)(7) (explaining that to establish acquiescence, "the public official, prior to the activity constituting torture, [must] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity"); *Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006) (explaining that acquiescence includes "willful blindness"). The country-conditions reports do not undermine this conclusion. Contrary to Galicia's assertion, the BIA acknowledged these reports, "documenting

corruption within the Guatemalan government." But Galicia was required to show a *particularized* risk of torture to her. *Yousif v. Garland*, 53 F.4th 928, 938 n.5 (6th Cir. 2022) ("[E]ach noncitizen must establish a particularized threat to him or her, and reports, on their own, don't get them over the line."). Galicia has failed to demonstrate a clear probability that the Guatemalan government would acquiesce in her torture if she were removed, so her claim for CAT protection fails. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 501–02 (6th Cir. 2015).

\* \* \*

We DENY Galicia's petition for review.